[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10611
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00015-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RENEE GARRETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 18, 2012)

Before CARNES, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Renee Garrett, a former United States Postal Service employee, appeals her

convictions for three counts of mail theft in violation of 18 U.S.C. § 1709.  She

contends that the district court erred in denying her motion for judgment of acquittal on each count because (1) the superseding indictment was facially defective; (2) the evidence was insufficient to support the jury verdict; and (3) the government failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963).

## I.

A grand jury returned a superseding indictment charging Garrett with three counts of mail theft in violation of 18 U.S.C. § 1709. Count 1 alleged that between July 3, 2005, and October 24, 2007, Garrett embezzled coupons for free movie rentals at Movie Gallery in Cairo, Georgia. Count 2 alleged that on September 12, 2007, she embezzled mail that had "Free movie tickets . . . see inside for details" printed on the outside of the envelope. Count 3 alleged that on November 21, 2007, she embezzled a magazine addressed to John Davis. Each Count also alleged that the embezzled mail was "intended to be carried and delivered by [Garrett] as a Postal Service carrier."

At trial, a former manager of Movie Gallery testified that Garrett frequently used coupons for free movie rentals. Garrett often used coupons that had the same bar code, which meant they came from the same monthly mailing. Movie Gallery did not send out coupons with the same bar code from one month to the next. Nor

2

did it mail customers multiple copies of the same coupon. A Movie Gallery loss prevention employee testified that between July 3, 2005, and October 24, 2007, Garrett obtained 167 free movie rentals using the coupons. That employee also testified that Movie Gallery sent coupons only to customers with inactive accounts, but Garrett's account had never been inactive.

Other witnesses at trial testified that Movie Gallery's coupons were routed through the Cairo Post Office, which is where Garrett worked as a mail carrier. The coupons were sent as a bulk business mailing, and employees at the post office are supposed to put undeliverable bulk business mail into a bin (the "UBBM bin") for disposal. Employees are prohibited from taking mail from the UBBM bin for personal use.

After learning about Garrett's Movie Gallery coupon use, a supervisor at the Cairo Post Office, Amy Edenfield, created three decoy "Movie Goers" mailings, which had "Free movie tickets . . . see inside for details" printed on the outside of the envelopes. Edenfield testified that she addressed the mailings to undeliverable addresses on Garrett's delivery route. The envelopes contained a letter stating that the receiver would get a free movie coupon in the mail if he or she completed and returned an enclosed questionnaire.

On September 12, 2007, Edenfield placed the three decoy letters in the bulk

3

business mail pile for Garrett to deliver. Edenfield watched Garrett to see if she put the undeliverable decoy letters into the UBBM bin. She did not. Edenfield testified that she eventually asked Garrett about the decoy letters, and Garrett confessed to taking them. Garrett told Edenfield that she filled out the questionnaires with the names of her father and son, and mailed them in for the free movie coupons using her home address as the return address.

Ellen Massey, a special agent with the Office of Inspector General for the Postal Service, was called in to investigate Garrett. On November 17, 2007, Agent Massey visited the Cairo Post Office with two additional decoy letters. She placed them on a pile of mail for Garrett to deliver and used video surveillance to watch Garrett handle the letters. Garrett picked up the decoys and put them into the side of her hamper instead of into the UBBM bin (where they should have gone), but she later transferred the letters from her hamper to the UBBM bin before going out on her route. Agent Massey testified that she had a videotape of the day's events, and said it showed Garrett performing her job "the proper way."

When Garrett returned from her route that day and was about to leave, Agent Massey asked Garrett if she could inspect her vehicle, which Garrett used for personal transportation and to perform her mail carrier duties. Garrett consented to the search, and Agent Massey found a magazine addressed to John

Davis on the front passenger seat. The magazine was placed face down beneath a pile of Garrett's personal mail. John Davis used to live on Garrett's delivery route, but he had a change of address form on file with the Cairo Post Office. Edenfield testified that there is no reason for a mail carrier to take mail out of the post office if it is addressed to someone with a change of address form on file. The magazine should have been put into a bin with other mail to be forwarded.

Garrett testified in her own defense at trial and admitted to taking Movie Gallery coupons from the UBBM bin and using them in over 100 transactions. She also admitted to taking one of the decoy Movie Goers mailings and completing the questionnaires by using the names of her dead father and her son.

Garrett moved for an acquittal after the prosecution's case-in-chief and renewed her motion at the close of evidence. The district court denied the motion and the jury found Garrett guilty on all three counts. This is Garrett's appeal.

## II.

Garrett first argues that the district court should have granted her motion for a judgment of acquittal because the superseding indictment is facially defective. She claims the indictment fails to allege all of the essential elements of the charged offenses. We review de novo the sufficiency of an indictment. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003).

"An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Steele, 178 F.3d 1230, 1233–34 (11th Cir. 1999) (quotation marks omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence [sic] intended to be punished." Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907 (1974) (quotation marks omitted). We have explained that an indictment is sufficient if it "tracks the language of the statute" and provides a statement of facts informing the accused of the specific offense with which she is charged. United States v. Schmitz, 634 F.3d 1247, 1261 (11th Cir. 2011).

The statute under which Garrett was charged (and convicted) prohibits a "Postal Service officer or employee" from "embezzl[ing]" any mail "entrusted to [her] or which comes into [her] possession intended to be conveyed by mail, or carried or delivered by any carrier." 18 U.S.C. § 1709. The superseding indictment in this case tracks that general language. Each count of the indictment

6

charges that on different dates Garrett "did embezzle mail" that came "into her possession intended to be carried and delivered by her as a Postal Service carrier." The indictment also provides a sufficient statement of facts by providing the specific dates that Garrett embezzled the mail and identifying what specific articles of mail she embezzled. Those allegations presented the essential elements of the offense and sufficiently informed Garrett of the charges she had to defend against. The indictment is not defective.

### III.

Garrett's next argument is that the evidence presented at trial was insufficient to support her convictions. We review de novo a challenge to the sufficiency of the evidence and will affirm the conviction if a reasonable factfinder could have found that the evidence established the defendant's guilt beyond a reasonable doubt when viewing the evidence in the light most favorable to the verdict. United States v. White, 663 F.3d 1207, 1213 (11th Cir. 2011). Whether the evidence is direct or circumstantial, we will make all reasonable inferences that tend to support the verdict. United States v. Williams, 390 F.3d 1319, 1323–24 (11th Cir. 2004).

The record contains sufficient evidence to sustain Garrett's convictions. As for Count 1, Garrett testified at trial that between July 3, 2005, and October 24,

7

2007, she took coupons from the UBBM bin and used them "over a hundred times" while employed as a mail carrier. She similarly admitted to the allegations in Count 2, testifying that she took two of the decoy letters and filled out the enclosed questionnaires using the names of her son and her dead father. Based on Garrett's own testimony, a reasonable jury could conclude that she embezzled the letters described in Counts 1 and 2.

As for Count 3, the government presented evidence that on November 21, 2007, when Garrett was about to leave the post office at the end of the work day, she had a magazine addressed to John Davis in her car. The magazine was found face down, beneath her personal mail. Because John Davis had a change of address form on file, Garrett had no valid reason to take the magazine out of the post office and put it into her car. From that evidence, a reasonable jury could conclude that Garrett had embezzled the magazine.

IV.

Garrett's final argument is that the district court erred by not dismissing the indictment because the government violated Brady when it failed to disclose before trial the videotape that Agent Massey recorded on November 17, 2007, which Agent Massey said showed Garret performing her job properly.

We review de novo a district court's determination about whether a Brady

8

violation occurred.  United States v. Schlei, 122 F.3d 944, 989 (11th Cir. 1997).

To establish a Brady violation:  (1) the evidence must be favorable to the accused

because it is either exculpatory or impeaching; (2) the evidence must have been

suppressed by the government, either willfully or inadvertently; and (3) the

evidence must be material so as to establish prejudice.  United States v. Naranjo,

634 F.3d 1198, 1212 (11th Cir. 2011).  Evidence is material if there is a reasonable

probability that a different result would have occurred had the evidence been

disclosed.  Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555, 1565 (1995).

Garrett's Brady challenge fails because she has not established that the

videotape is material evidence.  Agent Massey testified that she watched Garrett

handle the mail on November 17, 2007, and that Garrett performed her duties "the

proper way."  The jury heard that testimony, and the videotape simply confirms it.

The government's failure to disclose a videotape showing what its witness

accurately described does not undermine our confidence in the outcome of the trial

in this case.  See Whitley, 514 U.S. at 435, 115 S.Ct. at 1566.  Nor does it

undermine our confidence because Garrett testified that she took coupons from the

UBBM bin and took the decoy letters for the free movie tickets.  A videotape

showing Garret not stealing mail during a limited period of time on one day does

not undermine or undo that testimony.

**AFFIRMED.**